IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KENNETH WILLIAMS, MARY WILLIAMS,                      PLAINTIFFS
and KENNETH L. WILLIAMS, on behalf
of themselves and all other similarly
situated

v.                  NO. 4:11-cv-00749 KGB

STATE FARM MUTUAL AUTOMOBILE                           DEFENDANT
INSURANCE COMPANY

## ORDER

BACKGROUND. Plaintiffs Mary Williams and Kenneth L. Williams were involved in an automobile accident. The record reflects that the following then occurred:

> … The Williams' vehicle was insured by Defendant State Farm Automobile Insurance Company. The other vehicle involved in the accident was insured by Allstate Insurance Company. Mary and Kenneth L. Williams were injured in the accident and received a settlement or damage award from Allstate. Plaintiffs were required to pay a portion of their recovery to Defendant State Farm as subrogation. There was no agreement between the Plaintiffs and Defendant that Plaintiffs had been "made whole" prior to the subrogation request.

See Docket Entry 30 at CM/ECF 1. The plaintiffs began this case by filing a complaint and seeking, inter alia, class certification on behalf of all others similarly situated.

United States District Judge James M. Moody, Jr., the judge to whom this case was then assigned, granted the plaintiffs' motion for class certification. He identified the class as follows:

> Residents of the State of Arkansas who, during the Class Period of October 14, 2006 through the date of resolution of this action, (a) have, had, or were covered under a contract of automobile insurance with Defendant that includes or included an optional "med pay" and/or "PIP" coverage, (b) received a payment from Defendant under such coverage, (c) recovered money through settlement or otherwise from a third-party tortfeasor, without the assistance of counsel, and (d) had a portion of such recovery taken by Defendant as subrogation or reimbursement without (i) a judicial determination that the insured was made whole or (ii) any documentation in the claim file of an agreement that the insured was made whole.

<u>See</u> Docket Entry 85 at CM/ECF 2.

After a settlement conference with the undersigned, the parties settled the case. They reduced their agreement to writing ("Settlement Agreement"), and its provisions included the following:

> 3. <u>Claims Review Process and Identification of Qualifying Insureds</u>.
>
> A. State Farm will review the claim files and related data to identify any persons listed in the Class Data who are "Qualifying Insureds." Qualifying Insureds are those persons who meet the following criteria: (a) they are listed in the Class Data, (b) there is no objective documentation in the relevant claim file demonstrating that the person was represented by an attorney, (c) there is no objective documentation in the person's claim file memorializing an agreement that the insured was made whole, and (d) there is no documentation that the reimbursement was not med-pay recovery.
>
> B. For each Qualifying Insured, State Farm will calculate the Gross Subrogation Recovery Amount, defined as the subrogation recovery amount plus interest accruing at six percent per annum, from the first date of subrogation recovery through the date of 90 days after the entry of the Stay Order.
>
> C. State Farm will complete this process and provide all required information to Plaintiff's Counsel, by no later than 180 days from entry of the Stay Order. Any person listed in the Class Data whose claim file has not been reviewed within 180 days of the entry of the Stay Order, and who did not request exclusion from the Class, shall be deemed a Qualified Insured and will receive a Payment Check calculated based upon the

subrogation recovery amount in the Class Data, in accordance with Paragraph 7.

    D. During this review process every thirty (30) days, State Farm will provide Plaintiff's Counsel with a report identifying, cumulatively: (a) those persons determined to be Qualifying Insureds, the subrogation recovery amount and the Gross Subrogation Recovery Amount and (b) those persons State Farm contends are not Qualifying Insureds along with documentation supporting that contention. …

    E. If Plaintiff's Counsel objects to State Farm's determination that a particular insured is not a Qualifying Insured, Plaintiff's Counsel will inform State Farm of that objection, and request any additional documents from the claims files and data, within twenty (20) days of the determination. State Farm shall respond to any such objection/request within twenty (20) days. If the parties cannot resolve the dispute over whether the documentation provided by State Farm demonstrates that the insured is not a Qualifying Insured, then the dispute will be resolved by Magistrate Judge Patricia Harris, with no right of appeal. … Such disputes will be decided in a hearing, based upon the claims report and data, with no additional paper submissions or filing, unless requested by Magistrate Harris.

    …

    19. <u>Applicable Law</u>. The existence, validity, construction and operation of this Agreement, and all of its covenants, agreements, representations, warranties, terms, and conditions shall be determined in accordance with the laws of the State of Arkansas.

    20. <u>Mutual Drafting</u>. This Agreement is the product of negotiations at "arm's length" between the Parties, both of whom are represented by counsel. As such, the terms of this Agreement are mutually agreed-upon, and no part of this Agreement will be construed against the drafter.

A dispute has now arisen between the parties as to whether certain persons are "Qualifying Insureds." The dispute centers, in large part, on the meaning of certain provisions in the Settlement Agreement and the quantum of evidence required to satisfy those provisions. At the request of the Court, the parties submitted reports on the issues, and a hearing was held on September 29, 2017. On the basis of the reports and

arguments, the law of the State of Arkansas, and giving the provisions of the Settlement Agreement their plain and ordinary meaning, the Court finds that the dispute should be, and is, resolved in the following manner.

ARKANSAS LAW. The parties agreed to be bound by the laws of the State of Arkansas. It is beneficial, then, to briefly review the laws of the State of Arkansas pertaining to contracts generally and subrogation specifically.

Settlement agreements in the State of Arkansas are contractual in nature. See Williams v. Davis, 9 Ark. App. 323, 659 S.W.2d 514 (1983). In Coleman v. Regions Bank, 364 Ark. 59, 216 S.W.3d 569, 574 (2005), the Arkansas Supreme Court identified several of the general rules governing contract interpretation:

> … The first rule of interpretation of a contract is to give to the language employed the meaning that the parties intended. [Citations omitted]. In construing any contract, we must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. [Citations omitted]. The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it. [Citation omitted]. …

With specific regard to subrogation, Riley v. State Farm Mutual Automobile Insurance Company, 2011 Ark. 256, 381 S.W.3d 840 (2011), holds considerable sway in this case. The state Supreme Court decision in that case stands, "in part, for the proposition that an insurance company and its insured are permitted to reach an agreement that the insured has been made whole without the necessity of a judicial determination, …; however, such 'agreement' cannot be evidenced by an insured's payment of subrogation funds to its insurer, without more." See Eastwood v. Southern Farm Bureau Casualty Insurance Company, 291 F.R.D. 273, 281 (W.D.Ark. 2013)

4

[internal quotations and citation omitted]. More is required, and United States District Judge P.K. Holmes noted that "more" included the following in his decision in <u>Eastwood v. Southern Farm Bureau Casualty Insurance Company</u>:

> … Even an implied-in-fact contract must demonstrate the intention of the parties through their acts or other circumstances. [Citation omitted]. An insured's payment of a subrogation demand does not necessarily mean that payment was made due to the insured's belief or understanding that he had been made whole prior to payment. Both express and implied contracts are founded upon mutual assent of the parties and require a meeting of the minds. [Citation omitted]. …

<u>See</u> <u>Id</u>. at 281-282. A court is to employ an objective test in making the determination, focusing on "objective indicators of agreement and not subjective opinions." <u>See</u> <u>Ward v. Williams</u>, 354 Ark. 168, 118 S.W.3d 513, 520 (2003).

<u>JUDGE MOODY'S OBSERVATIONS IN CERTIFYING THE CLASS IN THIS CASE</u>. It is also helpful to make note of the observations made by Judge Moody in this case. In his order granting the plaintiffs' motion for class certification, he observed the following:

> … During discovery, Plaintiffs sought and the Court ordered Defendants to produce exemplary claim files in which made whole discussions or conversations occurred and State Farm recovered med pay or PIP from its insured. Following the production of these files, State Farm's claim representative testified that there was no written made whole policy issued by State Farm; if a made whole agreement was reached with an insured it would be a significant event that would need to be documented in the claim file….

<u>See</u> Docket Entry 85 at CM/ECF 4-5.

<u>ANALYSIS</u>. The plaintiffs maintain that the parties' dispute can be broken down into five categories or five groups of claims requiring the undersigned's attention. Defendant State Farm Mutual Automobile Insurance Company ("State Farm") does not

5

seriously object to addressing the dispute in such a manner so the Court will address it in that manner.

1. <u>Whether there is objective documentation in the insured's claim file memorializing an agreement that the insured was "made whole."</u> Paragraph 3(A), section (c), of the Settlement Agreement provides that a person is a "Qualifying Insured" if "there is no objective documentation in the person's claim file memorializing an agreement that the insured was made whole." State Farm takes the position that it has provided the plaintiffs with such proof, proof in the form of letters or other communication from State Farm to its insureds in which State Farm confirmed a discussion or agreement that the insureds had been "made whole."[1] The plaintiffs maintain in response that the proof is not "objective documentation" memorializing an agreement that the insureds had been "made whole."[2] The plaintiffs so maintain because there is no evidence that the insureds agreed with the representations contained in the letters.

Does State Farm's proof of "objective documentation" show the mutual assent of the parties and a meeting of the minds? Does an insured's silence following issuance of a letter or communication from State Farm purporting to confirm a made whole

---

[1] State Farm has offered an affidavit from Brenda Grubbs, a Team Manager in State Farm's P&C Claim Department. As exhibits to her affidavit, State Farm has attached what it represents to be "made whole" letters to some of its insureds. The Court understands these letters to be representative of the type of "made whole" letters sent to all of the "made whole" insureds.

[2] The plaintiffs maintain that State Farm's proof falls into one of three categories: 1) letters from State Farm to its insureds providing State Farm's subjective characterization of a telephone call in which an insured purportedly represented he or she was satisfied with the settlement, would not challenge State Farm's right to recovery, or was "made whole;" 2) letters from State Farm to its insureds providing State Farm's subjective characterization of a telephone call in which an insured purportedly stated he or she was unsatisfied with the settlement, and State Farm is agreeing to provide a partial payment of the money it received; and 3) subjective notes made by a State Farm claims representative to the file after a telephone call with an insured. The proof may be as the plaintiffs represent, but for purposes of this Order, the Court will treat the proof collectively or as one type.

agreement constitute assent? The Court thinks not. Certainly, the proof shows that State Farm and the insured discussed part or all of State Farm's right of subrogation. The Court also recognizes that every day, business is conducted by one party confirming in a letter the details of a conversation with another party and the parties then relying upon the representations contained in the letter. As Judge Moody noted, though, a State Farm claims representative testified that when a "made whole" agreement is reached with an insured, it is a "significant event." Because it is, something more than a letter or communication from State Farm to the insured outlining the details of a conversation is required to show the requisite mutual assent of the parties and a meeting of the minds. The proof offered by State Farm is therefore not the requisite "objective documentation."

2. <u>Whether there is documentation in the insureds' claim files that reimbursements were not Med-Pay recovery</u>. Paragraph 3(A), section (d), of the Settlement Agreement provides that a person is a "Qualifying Insured" if "there is no documentation that the reimbursement was not med-pay recovery."[3] The parties have identified a number of insured files in which State Farm received payment from a source other than the tortfeasor. For example, in some instances State Farm received payment from a medical care provider. That payment could have been made because State Farm had mistakenly made duplicate payments to the provider. Such payment could represent a refund resulting from State Farm's overpayment to a provider. It could also represent reimbursement of med-pay amounts to State Farm from a provider following the

---

[3] The Court recognizes that section (d) requires a different evidentiary standard ("no documentation") than does section (c) ("objective documentation").

provider's receipt of payment from the tortfeasor. In its report, State Farm maintains the following: "…for each of the files Plaintiffs have placed in the "recovery not from tortfeasor" category, there is documentation in the file that the reimbursement was not for med-pay recovery. State Farm provided documentation from the file showing that the reimbursement was not med-pay recovery."

The plaintiffs maintain that the source of payment to State Farm is irrelevant. They claim that the insured in issue is a Qualifying Insured and entitled to payment absent documentation showing the payment to State Farm, regardless of source, was **not** med-pay reimbusement. Additionally, they assert that without proof that such payment was for a reason other than med-pay reimbursement, the benefit belongs to the insured absent a made-whole agreement.

The Court is required to consider the plain and ordinary meaning of the words agreed to by the parties in the arms-length transactions that resulted in the Settlement Agreement. *See Coleman, supra; Alexander v. McEwen*, 367 Ark. 241, 239 S.W.3d 519 (2006). The Court is required to construe the contract language "by viewing the subject of the contract, as the mass of mankind would view it…." *Coleman, supra.* The language of the agreement provides that an insured is a Qualifying Insured if "there is no documentation that the reimbursement was not med-pay recovery." Conversely, an insured would **not** be a Qualifying Insured if there **is** documentation that the reimbursement was not med-pay recovery. A fair reading of this language, considering the plain and ordinary meaning of the words, leads the Court to conclude that save some clear indication that the reimbursement was for something other than med-pay recovery, it should be, and is, deemed to be med-pay recovery. It matters not that the

8

payment may have come from a source other than a tortfeasor. Additionally, the Court agrees with the plaintiff that absent evidence the payment was not for med-pay, and absent a "made whole" agreement or judicial determination, the benefit belongs to the insured.

3. <u>Whether insureds for whom State Farm conducted no review by the Settlement Agreement's 180 day deadline are entitled to Payment Checks</u>. Paragraph 3(C) of the Settlement Agreement provides, in part, that "[a]ny person listed in the Class Data whose claim file has not been reviewed within 180 days of the entry of the Stay Order, and who did not request exclusion from the Class, shall be deemed a Qualified Insured and will receive a Payment Check …" There appears to be some claim files that were not reviewed by State Farm within 180 days of the entry of the Stay Order, and the insureds did not request exclusion from the Class. A fair reading of the Settlement Agreement establishes that these insureds are entitled to Payment Checks. The Settlement Agreement afforded State Farm 180 days to review the claim files. When State Farm failed to do so by the expiration of the 180 day period, regardless of the reason why, the insureds qualified for Payment Checks.

4. <u>Whether insureds for whom State Farm designated non-qualifying but for whom State Farm produced no supporting documents by the 180 day deadline are entitled to Payment Checks</u>. Paragraph 3(A) of the Settlement Agreement provides, in part, that State Farm will review the claim files and related data to identify persons listed in the Class Data who are "Qualifying Insureds." Paragraph 3(C) provides, in part, that any insured listed in the Class Data whose claim file has not been reviewed within 180 days of the entry of the Stay Order, and who did not request exclusion from the

9

Class, shall be deemed a "Qualifying Insured." The paragraph also provides that State Farm will complete the review process and provide "all required information to Plaintiff's Counsel by no later than 180 days from entry of the Stay Order …" There appear to be some number of insureds who were designated "non-qualifying" but for whom no documentation was provided within the 180 day period to substantiate the designation. The plaintiffs concede that State Farm produced some documentation that might substantiate the designation but maintain that the production was made well past the 180 day deadline.

Giving the provisions of the Settlement Agreement their plain and ordinary meaning, the Court finds that the parties agreed to a 180 day period during which State Farm was required to produce documentation that an insured was not a "Qualifying Insured." If State Farm failed to produce documentation by that deadline, the insured would be deemed a "Qualified Insured." Once that deadline passed, any additional documentation was irrelevant and need not be considered. Thus, if no documentation was provided by the 180 day deadline to substantiate the non-qualifying designation, an insured is deemed a "Qualifying Insured."

5. <u>Whether insureds who State Farm classified as "Qualifying Insureds but reduced the Payment Check amounts with no explanation of support are entitled to Payment Checks calculated on the subrogation recovery amount in the Class Data</u>. Paragraph 3(B) of the Settlement Agreement provides that "[f]or each Qualifying Insured, State Farm will calculate the Gross Subrogation Recovery Amount, defined as the subrogation recovery amount plus interest accruing at six percent per annum, from the first date of subrogation recovery through the date of 90 days after entry of the

Stay Order." The plaintiffs maintain that there are Payment Check amounts that State Farm proposes to reduce, because of a lower interest calculation or for some other reason, but State Farm has not provided any documentation to support the reduction.

The Settlement Agreement contains no provision addressing the reduction of Payment Check amounts, save a provision found in Paragraph 7 that the amounts will be reduced pro rata by the attorney's fees and costs incurred in prosecuting this case. For instance, the agreement does not contain provisions addressing how the amounts can be reduced, what quantum of evidence is required to substantiate the proposed reduced amounts, or when State Farm must produce documentation supporting the proposed reduced amounts. The agreement simply provides that for each "Qualifying Insured," State Farm will calculate the "Gross Subrogation Recovery Amount" and pay the insured that amount. The Court is reluctant to read into the Settlement Agreement a provision not bargained for by the parties. For that reason, the Court will enforce the provisions of the Settlement Agreement and find that State Farm shall pay each "Qualifying Insured" the "Gross Subrogation Recovery Amount," minus each "Qualifying Insured's" portion of the attorney's fees and costs.

The parties should use this Order as a guide in resolving the remaining outstanding claims.

IT IS SO ORDERED this 6th day of October, 2017.

_____
UNITED STATES MAGISTRATE JUDGE